AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The premises located at 5915 NE Sumner Street,<br>Portland, OR 97218, further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. '20 -MC- 97

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The premises located at 5915 NE Sumner Street, Portland, OR 97218, further described in Attachment A hereto.

located in the _____ District of _____ Oregon _____, there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(5)(B), 2422(b), 2423(b), and 2241(c) | Possession of child pornography, attempted online enticement, travel with intent to engage in illicit sexual conduct, and attempting to cross a state line with the intent to engage in sexual activity with a child under the age of 12. |

The application is based on these facts:

See the attached affidavit of HSI Special Agent Julie Peay.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Julie Peay, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/30/2020

_____
*Judge's signature*

City and state:  Portland, Oregon

Honorable Jolie A. Russo, United States Magistrate Judge
*Printed name and title*

STATE OF OREGON      )
                        )  ss.          AFFIDAVIT OF JULIE PEAY

County Of Multnomah    )

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Julie Peay, being duly sworn, hereby depose and state as follows:

### Introduction

1.      I am a Special Agent (SA) with the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, Homeland Security Investigations (HSI), in Portland, Oregon. HSI is responsible for enforcing the customs laws, immigration laws, and federal criminal statutes of the United States. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am authorized by law to conduct investigations and to make arrests for felony offenses. I have been a federal law enforcement officer for over 20 years. I have been involved in investigations of child exploitation and pornography, conspiracy, money laundering, narcotics, fraud, and alien smuggling. My duties include the enforcement of federal criminal statutes prohibiting the sexual exploitation of children, including Title 18, United States Code, Sections 2251 through 2259, the Sexual Exploitation of Children Act (SECA), and Title 18, United States Code, Section 2423(a), which prohibits the interstate transportation of a minor for the purpose of engaging in unlawful sexual conduct. I have participated in the execution of search warrants involving child exploitation and/or child pornography offenses, and the search and seizure of computers and other digital devices. I am a member of the Seattle Internet Crimes Against Children (ICAC) Task Force in the Western District of Washington, and work with other federal, state, and local

**PAGE 1 - AFFIDAVIT OF JULIE PEAY**

law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 5915 NE Sumner Street, Portland, OR 97218 ("the premises"), further described in Attachment A, for contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(5)(B), 2422(b), 2423(b), and 2241(c) which prohibit possessing child pornography, online enticement of a minor, interstate travel with intent to engage in illicit sexual conduct, and attempting to cross a state line with the intent to engage in a sexual act with a person who has not attained the age of 12 years.  As set forth below, I have probable cause to believe that such items, further described in Attachment B, including any digital devices or electronic storage media, are currently located in the premises.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The statements contained in this affidavit are based upon the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

**Applicable Law**

4.      a.      Title 18 U.S.C. § 2252A(a)(5)(B) makes it a crime to knowingly possess or access with intent to view child pornography that has been mailed, shipped, or transported in

**PAGE 2 - AFFIDAVIT OF JULIE PEAY**

or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. The term child pornography is defined in 18 U.S.C. § 2256(8).

   b.  Section 2422(b) makes it a crime to use a means and facility of interstate and foreign commerce to knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense, or to attempt to do so.

   c.  Section 2423(b) makes it a crime to travel in interstate commerce with a motivating purpose of engaging in any illicit sexual conduct with a person under 18 years of age. The term "illicit sexual conduct" is defined in 18 U.S.C. § 2423(f).

   d.  Section 2241(c) makes it a crime to cross a state line with the intent to engage in a sexual act with a person who has not attained the age of 12 years.

### Background on Computers and Child Pornography

  5.  Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have drastically changed the manner in which child pornography is produced and distributed.

  6.  Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage.

  7.  Child pornographers can upload images or video clips directly from a digital camera to a computer. Once uploaded, they can easily be edited, manipulated, copied, and

**PAGE 3 - AFFIDAVIT OF JULIE PEAY**

distributed.  Paper photographs can be transferred to a computer-readable format and uploaded to

a computer through the use of a scanner.  Once uploaded, they too can easily be edited,

manipulated, copied, and distributed.  A modem allows any computer to connect to another

computer through the use of a telephone, cable, or wireless connection.  Through the Internet,

electronic contact can be made to literally millions of computers around the world.

8.      The computer's ability to store images in digital form makes it an ideal repository

for child pornography.  The size of the electronic storage media (commonly referred to as the

hard drive) used in home computers has grown tremendously within the last several years.  These

drives can store thousands of images at very high resolution.  Images and videos of child

pornography can also be stored on removable data storage media, such as external hard drives,

thumb drives, CDs or DVDs, media cards, and the like, many of which are small and highly

portable and easily concealed, including on someone's person.

9.      The Internet affords users several different venues for obtaining, viewing, and

trading child pornography and for communicating with others in a relatively secure and

anonymous fashion about the sexual abuse or exploitation of children, including Internet Relay

Chat, instant messaging programs, bulletin board services, e-mail, and "peer-to-peer" (P2P) file

sharing programs and networks.  Offenders often meet like-minded individuals online to discuss

the sexual abuse or exploitation of children and to make arrangements to meet children in order

to engage in sexual activity with a child.  Collectors and distributors of child pornography also

use online resources such as "cloud" storage services to store and retrieve child pornography.

Such online services allow a user to set up an account with a remote computing service that

provides e-mail services as well as electronic storage of computer files in any variety of formats.

**PAGE 4 - AFFIDAVIT OF JULIE PEAY**

A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer.

10.     As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in the computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains P2P software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

11.     I know based on my training and experience and based on conversations I have had with others who investigate child exploitation offenses, that people who have a sexual interest in children, including persons who collect and trade in child pornography, often receive sexual gratification from images and video clips depicting the sexual exploitation of children. They may also use such images and videos to lower the inhibitions of children who they wish to sexually abuse. Such persons maintain their collections of child pornography in safe, secure, and private locations, such as their residence, and on computers and digital storage media under their direct control. Such persons often maintain their collections, which are considered prized possessions, for long periods of time, and prefer not to be without their collections for any prolonged period of time. In some recent cases, however, some persons with a sexual interest in

**PAGE 5 - AFFIDAVIT OF JULIE PEAY**

children have been found to download and delete child pornography on a cyclical and repetitive basis, rather than storing a collection of child pornography indefinitely.

13.    I know based upon my training and experience that mobile devices, such as smartphones and tablet computers, have in many cases replaced traditional computers for many people due to the devices' portability, capabilities, and security features.  For example, there are many P2P platforms such as BitTorrent that can be installed and used on a smartphone, thus allowing for immediate access to child pornography wherever the user happens to be.

14.    I also know from my training and experience, from having an understanding of a person's mobile device use, and from my experience as an investigator, that a person with a sexual interest in children will likely have evidence of child exploitation and child pornography related activities on their mobile device.

15.    I know from my training and experience that mobile devices can be backed up to computers.  I have personally seen in many cases I have investigated that people transfer data from their mobile devices to their computers as a way to backup and preserve the data on their mobile phone.  I know that a thorough investigation of child pornography crimes requires law enforcement to seize computers, not only for the reasons listed above, but also because the mobile device backups can be recovered, decrypted, and parsed by computer forensic examiners. The data from mobile backups is useful and relevant in an investigation of child pornography.

16.    Importantly, evidence of such activity, including deleted child pornography and records related to online activity regarding the sexual exploitation of children, often can be located on these individuals' computers and digital devices through the use of forensic tools.

**PAGE 6 - AFFIDAVIT OF JULIE PEAY**

Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

## Statement of Probable Cause

17.     This investigation involves online undercover activity on an internet-messaging platform. Although this platform has numerous legitimate uses, it is known to law enforcement as one used by individuals who are interested in the sexual exploitation of children and child sexual exploitation imagery. They use this platform to exchange messages about child sexual exploitation and to share child sexual exploitation imagery.

18.     On October 28, 2019, an undercover law enforcement officer (the "UC") was a member of an internet-based chat platform known to law enforcement to be devoted to child exploitation and child exploitation imagery. The UC represented himself to be father of a five-year-old girl. On October 28, 2019, another user of this platform using the moniker [REDACTED]Pedo" (the SUBJECT USER) began chatting with the UC. Between October 2019 and January 2020, the SUBJECT USER used other monikers as well. During the chats, the SUBJECT USER expressed an interest in traveling to Washington State from Oregon to engage in sexual activity with the UC's five-year-old daughter. The SUBJECT USER has since been identified as Dirk Walter Tichgelaar. The excerpts that follow in this Affidavit provide a representative sample of the messages exchanged between the SUBJECT USER (Tichgelaar) and the UC. (NOTE: All dates and times related to online activity are in Coordinated Universal Time (UTC), which is eight hours ahead of Pacific Standard Time.)

    October 28 2019 18:05:36 <SUBJECT USER> i'm derrick btw, 44m
    October 28 2019 18:05:38 <UC>  :)
    October 28 2019 18:05:49 <UC>  [REDACTED] m WA
    October 28 2019 18:05:56 <SUBJECT USER> nice to meet you [REDACTED]

**PAGE 7 - AFFIDAVIT OF JULIE PEAY**

October 28 2019 18:06:00 <SUBJECT USER> oh and your localish

October 28 2019 18:06:31 <SUBJECT USER> i'm down in pdx

October 28 2019 18:06:41 <UC> cool

October 28 2019 18:06:42 <SUBJECT USER> maybe this can be a good day after all :) lol

October 28 2019 18:07:04 <UC> LOL

October 28 2019 18:07:10 <SUBJECT USER> mind if i ask how old your little ones are?

October 28 2019 18:07:35 <UC> not at all, son 4 and dau 5

October 28 2019 18:07:43 <SUBJECT USER> both active?

October 28 2019 18:07:54 <UC> active w/ my dau

October 28 2019 18:08:00 <SUBJECT USER> very nice

October 28 2019 18:08:04 <UC> :)

October 28 2019 18:08:05 <SUBJECT USER> new to it or for awhile?

October 28 2019 18:08:29 <UC> couple years now, but mostly in the last few weeks

October 28 2019 18:08:44 <SUBJECT USER> have you ever shared her with anyone?

October 28 2019 18:09:09 <UC> no, but fantasized about it intensely

October 28 2019 18:09:24 <SUBJECT USER> do you think you ever would irl?

October 28 2019 18:10:06 <UC> if the situation were right and i was positive that i wouldnt go to jail

October 28 2019 18:10:31 <UC> thought about her a lot w/ women and men

October 28 2019 18:11:17 <SUBJECT USER> well, maybe we can get to know each other and make something happen

October 28 2019 18:11:51 <UC> maybe

October 28 2019 18:12:32 <SUBJECT USER> won't ask where in WA, but you fairly close?

October 28 2019 18:13:19 <UC> it would def have to be w/ the right person tho. it would take some time and u would have to fit certain criteria. i have to be careful and know that ur not a serial killer

October 28 2019 18:13:32 <UC> lol

October 28 2019 18:13:52 <SUBJECT USER> i mean.... aren't we all a little bit of a serial.... j/k

October 28 2019 18:14:26 <UC> lol

October 28 2019 18:14:46 <UC> im a bit north of seattle, but don't want to say exactly where

October 28 2019 18:14:52 <SUBJECT USER> i won't ask

October 28 2019 18:15:31 <SUBJECT USER> to be honest i'm trying to find something longterm and regular

October 28 2019 18:16:26 <UC> can u describe yourself (approximately) im a huge voyeur and have fantasized about a certain type of man or woman

**PAGE 8 - AFFIDAVIT OF JULIE PEAY**

October 28 2019 18:16:52 <UC>  that may be a deal breaker

October 28 2019 18:17:07 <SUBJECT USER> 6'5", about 240ish lbs, shaved head... a decent amount of tattoos

October 28 2019 18:17:27 <UC> im a bit scared of longterm and regular.  i think its way cleaner if its one and done

October 28 2019 18:17:44 <SUBJECT USER> i can see that to

October 28 2019 18:17:58 <SUBJECT USER> i fit the look your wanting?

October 28 2019 18:19:07 <UC>  so far yes, would be way HOT to see her with a big guy like u.  i prefer to have her w/ someone bigger than me.  im 5'9 and about 175

October 28 2019 18:19:31 <UC>  fat or fit?

October 28 2019 18:19:31 <SUBJECT USER> how far have you gotten her? i'm not sure fucking her is in the cards at my size

October 28 2019 18:19:41 <SUBJECT USER> i like to say biker build lol

October 28 2019 18:20:14 <UC> lol a bit chubby w/ muscle underneath?

October 28 2019 18:20:24 <SUBJECT USER> yeah

October 28 2019 18:20:27 <UC>  cool

October 28 2019 18:20:41 <SUBJECT USER> i used to deadlift about 700lbs and leg press around 1200

October 28 2019 18:20:53 <UC>  nice

October 28 2019 18:21:09 <SUBJECT USER> then i got hit by a car lol

October 28 2019 18:21:25 <UC>  its like strongman level

October 28 2019 18:21:31 <SUBJECT USER> kind'a changed the workout pace

October 28 2019 18:21:44 <SUBJECT USER> nah, 700 an't that much

October 28 2019 18:22:01 <SUBJECT USER> and 1200 leg press just means that on the slide i had the weight maxxed out and my buddy sitting on it rofl

October 28 2019 18:22:46 <UC>  i see

October 28 2019 18:23:09 <SUBJECT USER> considering my bench was only 255, i just had a super strong back  was all lol

October 28 2019 18:23:14 <UC>  well, hell much stronger than me, even in my younger days

October 28 2019 18:23:29 <UC>  cool

October 28 2019 18:23:56 <UC> ive done mostly oral w/ [REDACTED]

October 28 2019 18:23:58 <SUBJECT USER> how far have you gotten her so far since you've been at it awhile

October 28 2019 18:24:04 <SUBJECT USER> no anal or anything?

October 28 2019 18:24:22 <UC>  started training her w/ fingers

October 28 2019 18:24:25 <SUBJECT USER> at 5 i know shes not ready for vaginal

October 28 2019 18:24:29 <UC>  and a plug.

October 28 2019 18:24:31 <SUBJECT USER> how is she at oral?

**PAGE 9 - AFFIDAVIT OF JULIE PEAY**

October 28 2019 18:24:51 <UC>  she sucks pretty good now.

October 28 2019 18:25:04 <UC>  usually in the jacuzzi tub b4 bed

October 28 2019 18:25:54 <SUBJECT USER> so taking the regular part away, would you  think about long term use with someone else?

October 28 2019 18:26:56 <UC>  i mean, i would think about more than once if it went REALLY well the first time

October 28 2019 18:27:18 <SUBJECT USER> i  was asking because.... god i would love to fuck her when she was around 10

October 28 2019 18:27:30 <UC>  im a pretty open minded guy, and u never know how things work out

October 28 2019 18:27:57 <UC>  HOT

October 28 2019 18:29:15 <SUBJECT USER> how soon would you think about considering someone coming up for a little oral?

October 28 2019 18:30:17 <UC>  dude, if i knew u were the real deal and exactly what im looking for, i would want it like yesterday

October 28 2019 18:30:25 <SUBJECT USER> lol

October 28 2019 18:30:32 <SUBJECT USER> so ask me anything man :)

October 28 2019 18:30:41 <UC>  as long as ur OK w/ me watching and jerking.

October 28 2019 18:30:48 <SUBJECT USER> i'm fine with it

October 28 2019 18:30:52 <UC>  really?

October 28 2019 18:31:10 <SUBJECT USER> she's yoru dau, your letting do what i want :) do  your thing

October 28 2019 18:31:14 <SUBJECT USER> just don't shoot on me

October 28 2019 18:31:16 <SUBJECT USER> lol

October 28 2019 18:31:26 <UC>  lol

October 28 2019 18:31:34 <UC>  no i hate violence

October 28 2019 18:31:45 <SUBJECT USER> wrong kind of shoot lol

October 28 2019 18:31:54 <UC>  oh shoot on you

October 28 2019 18:31:55 <UC>  lol

October 28 2019 18:32:06 <UC>  no, not really into guys

October 28 2019 18:32:21 <SUBJECT USER> yeah, but misfires [REDACTED], misfires

October 28 2019 18:32:36 <SUBJECT USER> lol

October 28 2019 18:33:11 <UC>  lol i prefer to be out of view from her while ur w/ her

October 28 2019 18:33:45 <UC>  do u take any drugs or drink way to much?

October 28 2019 18:34:11 * Disconnected (No such device or address)

October 28 2019 18:36:17 <UC>  sorry

October 28 2019 18:36:25 <SUBJECT USER> all good

October 28 2019 18:36:31 <UC>  do u take any drugs or drink way to much?

**PAGE 10 - AFFIDAVIT OF JULIE PEAY**

October 28 2019 18:36:37 <SUBJECT USER> no  and no\

October 28 2019 18:36:51 <SUBJECT USER> i drink monster and water lol

October 28 2019 18:37:29 <UC> lol. im ok w/ a little weed and booze in moderation, just nothing hardcore

October 28 2019 18:38:32 <SUBJECT USER> i smoke a little weed once in awhile, but i don't drink and nothing else

October 28 2019 18:38:39 <UC> cool

October 28 2019 18:39:05 <UC> into any bdsm, bondage, torture etc...?

October 28 2019 18:39:20 <SUBJECT USER> depending on the person and if they enjoy it as well

October 28 2019 18:39:34 <SUBJECT USER> bdsm and bondage, no  torture

October 28 2019 18:40:15 <SUBJECT USER> you?

October 28 2019 18:41:01 <UC> can u describe what u would love to do to [REDACTED], and by the way she has beautiful shiny dark hair, blue eyes, almost perfect skin, athletic figure and kinda small for a 5yo

October 28 2019 18:41:30 <SUBJECT USER> first i would want to kiss and lick all over her body, feel and taste here

October 28 2019 18:41:33 <SUBJECT USER> her

October 28 2019 18:42:11 <SUBJECT USER> as my cock got nice and hard i'd like to rub it over her pussy just to feel it

October 28 2019 18:42:31 <UC> yes!

October 28 2019 18:42:38 <SUBJECT USER> if she can have her stroke me a little before i have her start  doing oral

October 28 2019 18:43:05 <SUBJECT USER> i would either cum in her mouth or pull out and cum on her

October 28 2019 18:43:50 <UC> which is better?

October 28 2019 18:43:59 <SUBJECT USER> does she swallow?

October 28 2019 18:45:21 <UC> of course

October 28 2019 18:45:29 <SUBJECT USER> then i would prefer in her mouth

October 28 2019 18:46:26 <UC> nice

October 28 2019 18:46:43 <SUBJECT USER> am i fitting your bill so far? :)

October 28 2019 18:47:11 <UC> to a disturbing degree

October 28 2019 18:47:55 <SUBJECT USER> :)

October 28 2019 18:48:52 <UC> heres the deal tho.  u would have to promise me that ur not into anything or u wouldn't do anything that would result in a trip to the hospital

October 28 2019 18:49:13 <UC> i dont want to draw attention to myself by cps or worse

October 28 2019 18:49:16 <SUBJECT USER> last  thing i  would want to do is hurt her

October 28 2019 18:50:42 <UC> i dont want to set arbitrary boundries and want the person that i share her with to feel free to explore but i dont want the attention

**PAGE 11 - AFFIDAVIT OF JULIE PEAY**

October 28 2019 18:51:56 <SUBJECT USER> boundaries are important, they don't just protect all parties involved but they also are what builds the trust needed

October 28 2019 18:52:44 <SUBJECT USER> there are your boundaries, my boundaries, and even her's

October 28 2019 18:53:34 <UC> i appreciate that, thank you

October 28 2019 18:53:54 <SUBJECT USER> not a prob

October 28 2019 18:54:06 <UC> sorry. ive been getting calls from my attorney...my ex wife is a pain in the ASS!

October 28 2019 18:54:16 <SUBJECT USER> anything else i can answer? i only ask because i need to cut this lsightly short... yeah i just got a call from work

October 28 2019 18:54:45 <UC> well if u want to continue to build trust u can email me here...

October 28 2019 18:55:00 <SUBJECT USER> [email address redacted]

October 28 2019 18:55:17 <UC> [email address redacted]

October 28 2019 18:55:55 <UC> i cant lie, u have got my heart racing today

October 28 2019 18:56:08 <UC> just thinkin about a big man w/ her

October 28 2019 18:56:54 <SUBJECT USER> i'm shooting you a quick email now

October 28 2019 18:57:01 <UC> kewl

October 28 2019 18:58:07 <SUBJECT USER> it's not my heart that pounding right now lol

October 28 2019 18:58:21 <UC> lol

October 28 2019 18:58:42 <UC> thx for the email got it

October 28 2019 18:58:49 <SUBJECT USER> cool cool

October 28 2019 18:59:03 <SUBJECT USER> i'd love to see her if your willing, i also get it if your not

October 28 2019 18:59:32 <UC> it may take time to build trust, my anxiety has been a bit high lately

October 28 2019 18:59:41 <UC> but im def interested

October 28 2019 19:00:00 <SUBJECT USER> i'm not pushy lol

October 28 2019 18:14:52 <SUBJECT USER> i won't ask

19.    In addition to these chats, the UC and the SUBJECT USER exchanged several email messages. On October 28, 2019, the SUBJECT USER sent the UC an email stating, "Hey, this is the guy in pdx from [REDACTED] that was talking to you about hanging out with you and [REDACTED]."

**PAGE 12 - AFFIDAVIT OF JULIE PEAY**

20.     Later, on October 28, 2019, the SUBJECT USER changed his chat moniker and again initiated a chat with the UC, which is excerpted below:

October 28 2019 21:45:21 <SUBJECT USER> i keep thinking about [REDACTED] lol
October 28 2019 21:45:31 <UC>  right!?!?
October 28 2019 21:45:43 <UC>  ive been thinkin about u w/ her all day
October 28 2019 21:45:52 <SUBJECT USER> i just keep picturing her little mouth on me

21.     On October 29, 2019, the UC emailed a single image file named "IMG_0008" to the SUBJECT USER, which was purported to be a photo of the UC.  The following day, the SUBJECT USER replied to the UC, saying, "very nice to meet you, was looking for you on [REDACTED] again and hadn't seen you....would love to setup a time to maybe meet up :)."

22.     On October 29, 2019, the UC replied, "hi derrick, how have you been? ive been thinking a whole lot about our chat for the last couple days.  im excited to continue to build trust, but i don't want to setup anything yet. im cautiously optimistic.. u can send a pic of yourself holding a sign with "[REDACTED]" on it... i would like to see what u look like before i agree to meet. –[REDACTED]."

23.     On October 31, 2019, the SUBJECT USER sent an email to the UC with a photo attached.  The photo depicts Tichgelaar.  The body of the message reads, "Sorry for the delay, i was driving when i got that.  Not so great at selfies lol."

24.     On October 31, 2019, the UC replied, "Hi Derrick- thanks for being honest... its great to see your exactlyas [sic] you described. i am very much interested in continuing to build trust.  maybe we could talk on the phone soon.  also- i should be on [REDACTED] again tomorrow for a couple hours. –[REDACTED]."

**PAGE 13 - AFFIDAVIT OF JULIE PEAY**

25.     That same day, the SUBJECT USER replied, "I'm on [REDACTED] at the

moment, will be on more again later.  Do you think it would also be possible for me to see a pic

of her as well?"

26.     On October 31, 2019, the SUBJECT USER initiated an internet chat with the UC,

excerpts of which are provided below:

> October 31 2019 21:35:52 <SUBJECT USER> hey again
> October 31 2019 21:36:14 <UC>  hey
> October 31 2019 21:36:22 <SUBJECT USER> how's it going?
> October 31 2019 21:37:20 <SUBJECT USER> good day today?
> October 31 2019 21:37:46 <UC>  not too bad, you?
> October 31 2019 21:37:57 <SUBJECT USER> just got off of work actually
> October 31 2019 21:37:57 <UC>  thx for the pic!
> October 31 2019 21:38:01 <SUBJECT USER> np
> October 31 2019 21:38:19 <UC>  cool to see ur not full of shit like so many on
> [REDACTED]
> October 31 2019 21:38:21 <SUBJECT USER> did you get the  email i sent today yet?
> October 31 2019 21:38:29 <UC>  no, sorry
> October 31 2019 21:38:33 <SUBJECT USER> no need to be full of shit lol
> October 31 2019 21:38:35 <SUBJECT USER> all good
> October 31 2019 21:38:44 <SUBJECT USER> i was just asking if there was any chance
> that i could see her as well
> October 31 2019 21:39:22 <UC>  im nervous about it, for obvious reasons
> October 31 2019 21:39:43 <SUBJECT USER> i get that, and i wouldn't ask for a nude or
> anything
> October 31 2019 21:40:00 <SUBJECT USER> and if you don't want to i'm totally cool
> with that  as well
> October 31 2019 21:40:07 <UC>  had emailed a pic of my niece to a guy years ago and
> ended up seeing it on a website
> October 31 2019 21:40:58 <SUBJECT USER> if you haven't noticed, i'm fairly laid back
> about shit lol, so  it's cool if your not wanting to
> October 31 2019 21:41:17 <UC>  did i describer her to u?
> October 31 2019 21:41:23 <SUBJECT USER> not really
> October 31 2019 21:41:32 <SUBJECT USER> i just know she's 5 if i remember right
> October 31 2019 21:42:11 <UC>  shes a bit small for a 5 year old, dark hair, blue eyes,
> athletic frame, very smooth skin

**PAGE 14 - AFFIDAVIT OF JULIE PEAY**

October 31 2019 21:42:25 <UC>  smile that lights up a room

October 31 2019 21:42:40 <SUBJECT USER> and hopefully  sucks a good cock lol :)

October 31 2019 21:42:51 <UC>  that she does my friend

October 31 2019 21:43:23 <SUBJECT USER> have you thought about making this something a little longer then one and done yet?  something where i can help you get her further along?

October 31 2019 21:44:47 <UC>  ive thought about it, but like i said im more comfortable w/ a one and done.  of course, i don't want to rule anything out.

October 31 2019 21:45:08 <SUBJECT USER>  :)

October 31 2019 21:46:19 <UC>  what besides oral do u want to do w/ [REDACTED]?

October 31 2019 21:46:27 <SUBJECT USER> do you have any kind of time frame for this happening that your ok with thus far? i don't ask  to be pushy i swear, i'm just curious

October 31 2019 21:46:34 <SUBJECT USER> at 5 she's not able to do more more

October 31 2019 21:46:40 <SUBJECT USER> i'd love to cum all over her though

October 31 2019 21:46:46 <SUBJECT USER> rub it on her pussy

October 31 2019 21:47:19 <SUBJECT USER> if it  was ongoing i would be trying to get her ready for anal within a few months,  and vaginal  by the time she was 8 - 10

October 31 2019 21:48:10 <UC>  yeah, i have been training her w/ a plug but don't know how big u are

October 31 2019 21:48:30 <SUBJECT USER> i'm  fairly thick, i don't think she'd be ready yet

October 31 2019 21:48:45 <UC>  i see

October 31 2019 21:49:01 <SUBJECT USER> how large a plug have you been using?

October 31 2019 21:49:49 <UC>  well started out w/ a tiny one about like a sharpie

October 31 2019 21:50:04 <UC>  i don't have a time frame really

October 31 2019 21:50:20 <SUBJECT USER> have you gotten bigger then  that plug or is that what your still using?

October 31 2019 21:50:42 <UC>  i would like to watch her w/ a bigger guy (bigger than me) b4 she is 9

October 31 2019 21:50:45 <SUBJECT USER> well,  as far as time frames go, just let me know when your comfortable and we can figure that out

October 31 2019 21:51:03 <SUBJECT USER> watch her anal, vaginal  or  oral?

October 31 2019 21:51:05 <SUBJECT USER> or all?

October 31 2019 21:51:51 <UC>  i have used a plug that is about 2sharpies

October 31 2019 21:52:09 <SUBJECT USER> have you tried fucking her yet?

October 31 2019 21:52:20 <UC>  no

October 31 2019 21:52:33 <SUBJECT USER> let me ask you honestly.....

October 31 2019 21:52:37 <SUBJECT USER> do you want me to try?

October 31 2019 21:52:56 <UC>  so this is where u get to see my weirdness

**PAGE 15 - AFFIDAVIT OF JULIE PEAY**

October 31 2019 21:53:09 <SUBJECT USER> lets hear it :)

October 31 2019 21:53:19 <UC> hope u don't think im a freak and don't know how judgmental u are

October 31 2019 21:55:07 <SUBJECT USER> waiting lol

October 31 2019 21:55:27 <UC> brb have to run for a sec

October 31 2019 21:55:32 <SUBJECT USER> ok

October 31 2019 22:08:26 <UC> well im a huge voyeur and the whole damn point of my fantasy is to watch her w/ a big guy and see what happens without setting arbitrary boundaries. in my mind im usually hiding in a closet so she cant see me and doesn't know that im there. usually im looking thru the crack in the closet and watching. this way i get to see how u both behave without me there. in actuality i would always be

October 31 2019 22:08:26 <UC> watching, but would luv to see how u would act without me there.

October 31 2019 22:09:39 <SUBJECT USER> with me alot of what i would do really will depend on how she reacts to me

October 31 2019 22:11:00 <UC> well, she's 5 and has been raised with fair amount of consequences so she is used to doing what adults tell her to do. so u can expect her to do whatever u wamt

October 31 2019 22:11:15 <SUBJECT USER> your getting me hard lol

October 31 2019 22:11:44 <UC> lol

October 31 2019 22:13:39 <SUBJECT USER> kind'a glad i donno where i'd going to get to your place yet rofl

October 31 2019 22:14:35 <UC> u would come sooner?

October 31 2019 22:15:03 <SUBJECT USER> yes

October 31 2019 22:15:16 <UC> glad ur as excited

October 31 2019 22:15:52 <UC> ive been thinking alot since our first chat and especially since seeing ur photo

October 31 2019 22:16:22 <SUBJECT USER> would you mind sooner?

October 31 2019 22:17:07 <UC> i will see what i can do, but november is looking pretty crazy for me. how long could u come for?

October 31 2019 22:18:19 <SUBJECT USER> sort of depends..... i know your north of me but i donno exactly where... it also depends on what the situation there is like while your gone when you need to be

October 31 2019 22:19:12 <UC> well just north of seattle

October 31 2019 22:19:25 <UC> could u stay for a week?

October 31 2019 22:19:34 <SUBJECT USER> i could most likely set that up

October 31 2019 22:20:03 <SUBJECT USER> could i have full access to her while there or would it only be when your around?

**PAGE 16 - AFFIDAVIT OF JULIE PEAY**

October 31 2019 22:20:27 <UC> i could host at my place. was thinkin bout a hotel, but don't want to spend the money because i would want to see her w/ u for a few days
October 31 2019 22:21:00 <SUBJECT USER> honestly, i'd come up this weekend if you said it was cool
October 31 2019 22:21:44 <UC> well, it actually would be nice to have you babysit for a few hours
October 31 2019 22:22:00 <SUBJECT USER> over the weekend?
October 31 2019 22:22:37 <UC> no, im still thinking december time frame. sorry
October 31 2019 22:22:59 <SUBJECT USER> all good, just checking lol
October 31 2019 22:23:18 <UC> the first three days, i would be there. maybe u could babysit the 4th day.
October 31 2019 22:23:30 <SUBJECT USER> i'd like that
October 31 2019 22:23:50 <SUBJECT USER> are you wanting your son to know whats going on with her or keep it away from him?
October 31 2019 22:24:19 <UC> i would love to see u with both of them, but guessing ur only into girls
October 31 2019 22:24:44 <SUBJECT USER> yeah
October 31 2019 22:24:45 <SUBJECT USER> but
October 31 2019 22:24:55 <SUBJECT USER> would you want him to use her at all?
October 31 2019 22:25:30 <UC> he hasn't shown much interest. he'll prob be gaming most of the time
October 31 2019 22:25:34 <SUBJECT USER> ok
October 31 2019 22:25:47 <SUBJECT USER> he isn't much older anyway is he/ lol like 6 right?
October 31 2019 22:25:51 <UC> and also doing his chores
October 31 2019 22:26:38 <UC> loves his ipad. hell be 5 in 4 months
October 31 2019 22:27:00 <SUBJECT USER> oh ok
October 31 2019 22:27:14 <SUBJECT USER> do they share a room or does she have her own?
October 31 2019 22:27:22 <UC> she has her own
October 31 2019 22:29:35 <UC> i think i would want to meet you at a neutral location
October 31 2019 22:29:53 <SUBJECT USER> that's fine
October 31 2019 22:30:04 <SUBJECT USER> staying with you, would i have a guest room or share hers?
October 31 2019 22:30:10 <UC> then drive u to my house, because i don't know how i feel about giving u my addresss ... sorry just paranoid
October 31 2019 22:30:20 <SUBJECT USER> all good man
October 31 2019 22:30:35 <UC> well, u would have a basement

**PAGE 17 - AFFIDAVIT OF JULIE PEAY**

October 31 2019 22:30:47 <SUBJECT USER> i'd have her staying with me at night, that ok with you?

October 31 2019 22:30:52 <UC> there's a bed, bath, small kitenette

October 31 2019 22:31:17 <UC> yes!

October 31 2019 22:31:44 <SUBJECT USER> depending on how things go i might try anal with her

October 31 2019 22:32:16 <UC> no prob. just have to promise me no trips to the hospital

October 31 2019 22:32:26 <SUBJECT USER> i won't hurt her

October 31 2019 22:32:53 <UC> discomfort is one thing the ER is another

October 31 2019 22:33:03 <SUBJECT USER> yup

October 31 2019 22:33:46 <SUBJECT USER> i hope you let me come stick my cock in her when she is ready for full sex to

October 31 2019 22:34:37 <UC> no idea

October 31 2019 22:34:49 <SUBJECT USER> like i said,  i hop elol

October 31 2019 22:35:07 <UC> understand. i dont blame u

October 31 2019 22:36:16 <SUBJECT USER> i'm just down for whatever your ok with

October 31 2019 22:36:32 <UC> cool

October 31 2019 22:37:11 <UC> are u planning on taking videos w/ her?

October 31 2019 22:37:18 <SUBJECT USER> would you be ok with it?

October 31 2019 22:37:22 <UC> because i have rules about that

October 31 2019 22:37:31 <SUBJECT USER> no face

October 31 2019 22:37:39 <UC> EXACTLY!

October 31 2019 22:37:53 <SUBJECT USER> would you hold  the cam and video me jerking onto her pussy?

October 31 2019 22:40:03 <SUBJECT USER> or holding it against her and doing the same?

October 31 2019 22:40:41 <UC> one sec, sorry

October 31 2019 22:40:45 <SUBJECT USER> ok

October 31 2019 22:56:03 <UC> sorry man!

October 31 2019 22:56:08 <SUBJECT USER> all good

October 31 2019 22:56:19 <UC> where were we

October 31 2019 22:56:43 <UC> ahhh yes, let me answer your question

October 31 2019 22:57:08 <UC> i would rather hide somewhere out of site. maybe u could set up ur own cam??

October 31 2019 22:57:39 <SUBJECT USER> ok

October 31 2019 22:58:00 <SUBJECT USER> i just realized it's halloween lol

October 31 2019 22:58:12 <UC> i just ask that u let me edit the video later with you so that u don't end up leaving w/ a video of her face

**PAGE 18 - AFFIDAVIT OF JULIE PEAY**

October 31 2019 22:58:25 <UC>  yes happy halloween!!
October 31 2019 22:58:34 <SUBJECT USER> yeah but you have the treat i want lol

27.    On November 4, 2019, the SUBJECT USER initiated an internet chat with the

UC, excerpts of which are below:

November 04 2019 01:54:50 <SUBJECT USER> hey bud
November 04 2019 01:55:23 <UC>  hi friend
November 04 2019 01:55:31 <SUBJECT USER> how you doing tonight?
November 04 2019 01:56:08 <UC>  a little tired but good.  still have the tailend of a head
cold. how are you?
November 04 2019 01:56:37 <SUBJECT USER> not doing to bad really, having a semi
decent night, would have been better if i could have cashed my work  check lol
November 04 2019 01:56:52 <SUBJECT USER> and a bit horny tonigh tif telling the
truth lol
November 04 2019 01:57:37 <UC>  lol story of our lives
November 04 2019 01:58:53 <SUBJECT USER> watching videos right now
November 04 2019 02:00:00 <UC>  was thinking that i might be able to carve out some
time to see you with [REDACTED] in mid november.  no promises, but one of my plans
went sideways and we could possibly meet before dec
November 04 2019 02:00:25 <SUBJECT USER> would be amazing
November 04 2019 02:00:35 <UC>  totally
November 04 2019 02:02:15 <SUBJECT USER> just give me a few days notice so  i can
get the  time away from work
November 04 2019 02:02:33 <UC>  ok
November 04 2019 02:02:45 <UC>  well i guess we could make tentative plans
November 04 2019 02:03:31 <SUBJECT USER> no, what i mean is, just give me 2 days
notice lol, that's all i would  need
November 04 2019 02:03:54 <SUBJECT USER> i  subcontract, so i just need to tell
them a few days prior that  i'll  be gone for a few days
November 04 2019 02:05:59 <UC>  also was thinking that ill feel more comfortable
meeting u at hotel near my house for the first night. then when/if things go well u can
follow me to my place
November 04 2019 02:06:24 <SUBJECT USER> i'm down for however you feel  the
most comfortable man, anything is good
November 04 2019 02:07:17 <UC>  it would just be u and [REDACTED] and i the first
night at the hotel. my son will stay w/ the sitter
November 04 2019 02:07:57 <UC>  my heart is racing just thinking about it

**PAGE 19 - AFFIDAVIT OF JULIE PEAY**

November 04 2019 02:07:57 <SUBJECT USER> that's fine, i'm totally cool with that. To be honest i won't really be spending time with your son like i am with [REDACTED]
November 04 2019 02:08:30 <UC> of course
November 04 2019 02:10:50 <SUBJECT USER> i can't wait :)
November 04 2019 02:11:05 <SUBJECT USER> and if things go well, i have something to try with her the 3rd or 4th night
November 04 2019 02:11:44 <UC> :) do tell
November 04 2019 02:12:56 <SUBJECT USER> gonna try a finger in her the 2nd night more then likely, 3rd as well, see how she does with a lubed finger.... if she does well and seems to like it i may try anal
November 04 2019 02:14:00 <UC> as long as i get to watch ;)
November 04 2019 02:14:13 <SUBJECT USER> you will be :) wouldn't leave you out

28.    Between late October 2019 and January 2020, the UC and the SUBJECT USER discussed the possibility of the SUBJECT USER traveling from Oregon to Washington State to engage in sexual activity with the UC's fictitious five-year-old daughter. During this time, the SUBJECT USER made plans to come to Washington State and then cancelled those plans. However, the SUBJECT USER continued to chat with the UC, often initiating the chats, and expressing an interest in meeting and raping this fictitious young girl.

29.    On January 24, 2020, the SUBJECT USER initiated a chat with the UC, excerpts of which are provided below:

January 24 2020 18:35:16 <UC>    im wondering...
January 24 2020 18:35:22 <SUBJECT USER>    ?
January 24 2020 18:38:02 <UC>    hold on... checking on some things.
January 24 2020 18:38:08 <SUBJECT USER>    ok
January 24 2020 18:38:45 <UC>    id really like to meet soon and im looking at my schedule
January 24 2020 18:43:01 <UC>    are you in washington now?
January 24 2020 18:43:24 <SUBJECT USER>    no, portland
January 24 2020 18:45:01 <UC>    im wondering if I can cancel my meetings and meet you tomorrow...but its a stretch
January 24 2020 18:46:05 <SUBJECT USER>    careful to not put yourself out to much..... though i would love that

**PAGE 20 - AFFIDAVIT OF JULIE PEAY**

January 24 2020 18:46:52 <UC>    could you come?
January 24 2020 18:48:24 <SUBJECT USER>    i'd leave tonight and get there early
January 24 2020 18:48:36 <SUBJECT USER>    i've been staying on a night schedule
January 24 2020 18:49:17 <SUBJECT USER>    i'm actually only awake cause your on here lol
January 24 2020 18:49:59 <UC>    i don't think i could make tonight work...im on the phone trying to see if sat will work
January 24 2020 18:50:35 <SUBJECT USER>    are you home later tonight?
January 24 2020 18:51:14 <UC>    no, doubt i can make that work
January 24 2020 18:51:37 <SUBJECT USER>    no no, i just mean in general... are you going to be home tonight
January 24 2020 18:52:07 <UC>    don't know
January 24 2020 18:52:35 <SUBJECT USER>    if you are.... give me a call, we can talk a bit and see if we can figure out our schedules and maybe play with her together some as well
January 24 2020 18:53:29 <SUBJECT USER>    that sound good?
January 24 2020 18:53:39 <UC>    can you come sat night?
January 24 2020 18:53:53 <SUBJECT USER>    i don't see any issues with that
January 24 2020 18:54:06 <SUBJECT USER>    am i just coming to your place or where am i going?
January 24 2020 18:54:19 <UC>    was thinking a hotel
January 24 2020 18:54:41 <SUBJECT USER>    will she be quite enough?
January 24 2020 18:54:52 <SUBJECT USER>    and are you only bringing her or do you need to bring your son as well?
January 24 2020 18:55:10 <UC>    i would just bring her
January 24 2020 18:55:25 <SUBJECT USER>    ok
January 24 2020 18:55:51 <SUBJECT USER>    i'll have to go find her something elsa :)
January 24 2020 18:56:15 <UC>    she would love that
January 24 2020 18:56:40 <UC>    i think she'd be quiet
January 24 2020 18:56:48 <SUBJECT USER>    are you dead set to a one and done thing or is there a chance that this could be something we do now and again?
January 24 2020 18:57:29 <UC>    we would have to talk about that when you get here...see how it goes.
January 24 2020 18:57:48 <SUBJECT USER>    ok
January 24 2020 18:58:11 <UC>    im more comfortable w/ one and done. safer, but open minded
January 24 2020 18:58:18 <UC>    brb
January 24 2020 18:58:34 <SUBJECT USER>    k

**PAGE 21 - AFFIDAVIT OF JULIE PEAY**

January 24 2020 19:05:16 <UC>      im still on the phone trying to make sat work
January 24 2020 19:05:37 <UC>      have to cancel some stuff
January 24 2020 19:06:01 <SUBJECT USER>      ok, i need need to crash lol, give me
a call or email me tonight ok?
January 24 2020 19:06:33 <UC>      ok.
January 24 2020 19:10:04 <SUBJECT USER>      ok, i'm out man, i need sleep lol

30.      During a subsequent email exchange, the UC confirmed that the meeting could

work and directed the SUBJECT USER to an address in Whatcom County as the meet location.

31.      On the morning of January 25, 2020, the HSI Portland office received a request

from HSI Blaine to conduct surveillance at the residence of Dirk Tichgelaar, located at 5915 NE

Sumner Street, Portland, OR 97218.  At approximately 8:09 a.m. I observed a White Ford F150

truck parked with Oregon license 987KSA parked on the street in front of the house.  Checks

conducted in law enforcement databases revealed Oregon license plate 987KSA is issued to a

2013 white Ford F150 truck registered to Dirk Walter Tichgelaar at 5915 NE Sumner St.,

Portland, OR 97218.  At approximately 9:49 a.m. I saw the vehicle, driven by an adult male,

leaving the residence.  I followed the vehicle from Oregon across the Colombia River, and into

Washington state.

32.      At approximately 2:30 p.m. on January 25, 2020, surveillance units saw

Tichgelaar arriving in the above-mentioned Ford F150 truck at the prearranged meet location.  A

Blaine HSI Special Agent purporting to be the UC called Tichgelaar on the phone and directed

him to a hotel in Whatcom County, where law enforcement agents and officers were waiting.

33.      Tichgelaar arrived at the hotel around 4:30 p.m., and the HSI agent pretending to

be the UC met him in the lobby.  Tichgelaar was carrying a brown paper bag.  When he was

asked what was in the bag, Tichgelaar said that it was an "Elsa" dress.  The agent and Tichgelaar

then went to a hotel room.  Other law enforcement agents entered the room shortly thereafter.

**PAGE 22 - AFFIDAVIT OF JULIE PEAY**

34.     HSI SA Matt Kimmel, Bellingham Police Department Detective Pauline Renick, and other HSI agents interviewed Tichgelaar.  SA Kimmel advised Tichgelaar of his rights. Tichgelaar acknowledged understanding his rights and agreed to answer questions in a recorded interview.  In summary, Tichgelaar acknowledged that he was the SUBJECT USER with whom the UC had been chatting and exchanging emails.  He stated that he used his desktop computer (described as a black "homemade" tower with blue lights) located in his Portland residence to chat with the UC.  He said that he had seen child pornography on the internet-based messaging platform through which he met the UC but did not save any child pornography to his computer. He said that he regularly used cleaning software (CC Cleaner) to wipe his digital media and that he would not expect there to be any evidence of child pornography on the devices at his home in Portland.  Tichgelaar eventually told agents that he might have child pornography on an old stack of CDs that was located in his Portland residence, although he was not certain.  Tichgelaar indicated that the wiping software was running on his computer when he left the house earlier that day and drove to Washington.  When asked if he had received help for his sexual attraction to children, Tichgelaar said that he finished treatment for it.  Tichgelaar acknowledged that what he chatted with the UC about doing to a five-year-old girl was illegal.  Tichgelaar explained his online activities as being a fantasy and said that this was the first time he had acted on the fantasy.

35.     In addition to the Elsa dress, Tichgelaar had a cell phone and a tube of personal lubricant in his pocket when he arrived at the meeting location.  Tichgelaar gave written consent for agents to search his cell phone.  The analysis of that device by HSI Blaine forensic agents is ongoing.  HSI agents confirmed that the paper bag that Tichgelaar had with him upon entering

**PAGE 23 - AFFIDAVIT OF JULIE PEAY**

the hotel room contained a child's Elsa dress (Elsa is a princess from the Disney movie "Frozen," and was discussed during one of the chats). Tichgelaar told agents that he had forgotten that the tube of lubrication was in his pocket and that he had used it while on a date with an adult female the previous evening. HSI Blaine agents searched Tichgelaar's truck but did not seize any items of evidence from it.

36.    Tichgelaar's Oregon driver's license lists his address as 5915 NE Sumner Street, Portland, OR 97218. While on surveillance on January 24, 2020, I observed a white 2008 Ford Escape with Oregon license plate 849DYE parked in the driveway of the residence. The vehicle is registered to Pacific Breeze Transport LLC at that address. I also observed a silver Nissan with Minnesota license plate BNT941 parked in the driveway. The Nissan is registered to Arianne Roberts at an address in Minnesota.

37.    An Oregon Business Registry Search revealed that Dirk Tichgelaar is the registered agent for Pacific Breeze Transport, LLC, whose business address is 5915 NE Sumner Street.

38.    A records check revealed that Tichgelaar was convicted of first degree assault and robbery in Multnomah County in 2003. Tichgelaar was convicted of 2 counts of first degree sexual abuse in Washington County, Oregon, in 2004. Police records indicate that the victim in the sex abuse case was a 12-year-old. Tichgelaar is a registered sex offender in the State of Oregon and last registered in August of 2019 at the Sumner Street address.

39.    The residence at 5915 NE Sumner Street, Portland, OR 97218, is described as a light brown single-story residential structure with a brown roof and a one car attached garage.

**PAGE 24 - AFFIDAVIT OF JULIE PEAY**

The front door faces Sumner Street and the numbers "5915" are displayed on the left side of the front door.

### Search and Seizure of Digital Data

40. This application seeks permission to search for particular items, described in Attachment B, which will likely be found in Dirk Tichgelaar's residence, in whatever form those items may be found. One form in which that evidence will likely be found is as data stored on a computer's hard drive, on other digital storage media, or on other digital devices, including cell phones. Thus, the warrant applied for would authorize the seizure of electronic storage media or the copying of electronically stored information, all under Fed. R. Crim. P. 41(e)(2)(B).

41. I have probable cause to believe that the items described in Attachment B will be stored on one or more digital device(s), based on the foregoing facts and on my knowledge, training, and experience that:

a. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a digital device, deleted, or viewed via the Internet. Electronic files downloaded to a digital device can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. When a person "deletes" a file on a digital device, the data contained in the file does not actually disappear; rather, that data remains on the digital device until it is overwritten by new data. Therefore, deleted files or remnants of deleted files may reside in free space or slack space – that is, in space on the digital device that is not currently being used by an active file – for long periods of time before they are overwritten. In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

**PAGE 25 - AFFIDAVIT OF JULIE PEAY**

b.      Wholly apart from user-generated files, digital devices – in particular, internal hard drives – contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it.  For example, forensic evidence can take the form of operating system configurations, artifacts from the operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Digital device users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

c.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

d.      I know from my discussions with computer forensic investigators that even if wiping software such as CCleaner was utilized, digital evidence may still exist on the computer, depending on how the wiping software was configured and used.  Even if no digital evidence remains, evidence of the use of wiping software – especially on the morning Tichgelaar traveled to Washington with the intent to engage in sexual conduct with a five-year-old girl – is evidence of his consciousness of guilt.  In addition, evidence indicating the date and time that the wiping program was most recently executed would corroborate what Tichgelaar told agents in the interview.

42.      As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant but also forensic electronic evidence that establishes how digital devices were used, the purpose of their use, who used them, and when.  I have probable cause to believe that this forensic

**PAGE 26 - AFFIDAVIT OF JULIE PEAY**

electronic evidence will be on any digital device in the residence because, based on my knowledge, training, and experience, I know:

      a.    Data on a digital device can provide evidence of a file that was once on the digital device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the digital device that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

      b.    Forensic evidence on a digital device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the digital device at a relevant time. Further, forensic evidence on a digital device can show how and when it was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access to the digital device, its use, and events relating to the offense under investigation. This "timeline" information may

**PAGE 27 - AFFIDAVIT OF JULIE PEAY**

tend to either inculpate or exculpate the user of the digital device.  In addition, forensic evidence on a digital device may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information on a digital device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the digital device, or password-protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a digital device (e.g., logs indicating that the incriminating information was accessed with a particular program).

   c. A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how digital devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a digital device is evidence may depend on other information stored on the digital device and the application of knowledge about how a digital device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is

**PAGE 28 - AFFIDAVIT OF JULIE PEAY**

not present on a digital device.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a digital device to commit a crime involving the sexual exploitation of children, the individual's digital device will generally serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  From my training and experience, I believe that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense. Additionally the digital devices in the residence will likely provide information on the wiping software that Tichgelaar indicated that he ran on his computer Saturday morning.

43.    In most cases, a thorough search of premises for information that might be stored on a digital device often requires the seizure of the device and a later, off-site review consistent with the warrant.  In lieu of removing a digital device from the premises, it is sometimes possible to image or copy it.  Generally speaking, imaging is the taking of a complete electronic picture of the digital device's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the digital device and to prevent the loss of the data either from accidental or intentional destruction.  This is true because:

a.      Not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a digital device has been used, what it has been used

**PAGE 29 - AFFIDAVIT OF JULIE PEAY**

for, and who has used it requires considerable time, and taking that much time on premises could

be unreasonable. As explained above, because the warrant calls for forensic electronic evidence,

it is exceedingly likely that it will be necessary to thoroughly examine digital devices to obtain

evidence. Digital devices can store a large volume of information. Reviewing that information

for things described in the warrant can take weeks or months, depending on the volume of data

stored, and would be impractical and invasive to attempt on-site.

b.      Records sought under this warrant could be stored in a variety of formats

that may require off-site reviewing with specialized forensic tools. Similarly, digital devices can

be configured in several different ways, featuring a variety of different operating systems,

application software, and configurations. Therefore, searching them sometimes requires tools or

knowledge that might not be present on the search site. The vast array of hardware and software

available makes it difficult to know before a search what tools or knowledge will be required to

analyze the system and its data on the premises. However, taking the digital device off-site and

reviewing it in a controlled environment will allow its examination with the proper tools and

knowledge.

44.      Because it appears that at least one other person resides at the premises, it is

possible that the premises will contain digital devices that are predominantly used, and perhaps

owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is

possible that the things described in the warrant could be found on any of those digital devices,

the requested warrant would permit the seizure and review of those items as well.

45.      *Nature of the examination.* Based on the foregoing, and consistent with Fed. R.

Crim. P. 41(e)(2)(B), the warrant for which I am applying would permit seizing, imaging, or

**PAGE 30 - AFFIDAVIT OF JULIE PEAY**

otherwise copying digital devices that reasonably appear to contain some or all of the evidence described in the warrant and Attachment B, and would authorize a later review of the device or information consistent with the warrant. The later review may require techniques, including computer-assisted scans of the entire device that might expose many parts of a hard drive to human inspection in order to determine whether it contains material subject to seizure and search under the warrant.

46.     The initial examination of the digital device will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of that time period from the Court.

47.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the digital device do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

48.     If an examination is conducted and the digital device does not contain any data falling within the ambit of the warrant, the government will return the digital device to its owner

**PAGE 31 - AFFIDAVIT OF JULIE PEAY**

within a reasonable period of time following the search and will seal any image of the digital

device absent further authorization from the Court.

49.     The government may retain any digital device containing contraband or evidence,

fruits, or instrumentalities of the offenses described above and in Attachment B, or to commence

forfeiture proceedings against the device and/or the data contained therein.

50.     The government will retain a forensic image of the digital device for a number of

reasons, including proving the authenticity of evidence to be used at trial, responding to

questions regarding the corruption of data, establishing the chain of custody of data, refuting

claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory

evidence claims where, for example, a defendant claims that the government avoided its

obligations by destroying data or returning it to a third party.

51.     The government has not made any prior efforts in other judicial fora to obtain the

evidence sought under the warrant.

### Conclusion

52.     Based on the foregoing information, I have probable cause to believe that

contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States

Code, Sections 2252A(a)(5)(B), 2422(b), 2423(b), and 2241(c), as set forth herein and in

Attachment B, are located at the residence located 5915 NE Sumner Street, Portland, OR 97218,

more fully described in Attachment A.  I therefore respectfully request the Court issue a warrant

authorizing a search of the premises at 5915 NE Sumner Street, for the items described above

and in Attachment B, and authorizing the seizure and examination of any such items found.

**PAGE 32 - AFFIDAVIT OF JULIE PEAY**

53.    This affidavit, the accompanying application, and the requested search warrant were reviewed by Assistant United States Attorney Gary Sussman prior to being submitted to the Court.  AUSA Sussman informed me that in his opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

JULIE PEAY
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this _____ day of January 2020.

THE HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**PAGE 33 - AFFIDAVIT OF JULIE PEAY**

## ATTACHMENT A

## Description of Location to be Searched

**The premises located at 5915 NE Sumner Street, Portland, OR 97218.**

The residence is a light brown single-story residential structure with a brown roof and a one car attached garage. The front door faces Sumner Street and the numbers "5915" are displayed on the left side of the front door.



**Attachment A**

**ATTACHMENT B**

**Items to Be Seized**

The following items, records, documents, and materials that constitute or contain

contraband or evidence, fruits, or instrumentalities of violations of Title 18, United States Code,

Sections 2252A(a)(5)(B), 2422(b), 2423(b), and 2241(c), which prohibits possessing child

pornography, attempted online enticement of a minor, interstate travel with intent to engage in

illicit sexual conduct, and attempting to cross a state line with the intent to engage in a sexual act

with a person who has not attained the age of 12 years.

1.    Items to be searched for, seized, and examined:

  a.    All records, documents, or materials, including correspondence, pertaining

to; the possession of, or accessing with intent to view child pornography (as that term is

defined in 18 U.S.C. § 2256), attempted online enticement of a minor, travel with intent

to engage in illicit sexual conduct, and attempting to cross a state line with the intent to

engage in a sexual act with a person who has not attained the age of 12 years;

  b.    All originals and copies of visual depictions of minors engaging in

sexually explicit conduct as that term is defined in 18 U.S.C. § 2256, including

photographs, images, and videos, whether in physical or digital form;

  c.    Computers, storage media, or digital devices, including cellular

telephones, that were used or are capable of being used to commit the offenses described

above, or to create, access, or store contraband or evidence, fruits, or instrumentalities of

those offenses;

  d.    Evidence of internet usage for the possession of or accessing with intent to

**Page 1 – Attachment B**

view child pornography, as defined in 18 U.S.C. § 2256, including dates and times of usage; IP addresses; and screennames, user names, and passwords used to access the internet or any accounts via the internet;

   e.  Communications, including emails, chats, bulletin board posts, and comments relating to the possession of, or accessing with the intent to view child pornography, to children engaging in sexually explicit conduct, to a sexual interest in children, or to travel with the intent engage in illicit sexual conduct with minors;

   f.  All records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as that term is defined in 18 U.S.C. § 2256.

  2.  As used in this attachment, the terms "records," "items," "documents," and "materials" include all of the foregoing items in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

  3.  For any computer or storage medium whose seizure is otherwise authorized by this warrant and any computer, storage medium, or digital device that contains, is capable of containing, or in which is stored records or information that is otherwise called for by this warrant (hereinafter "Computer"):

   a.  Evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

**Page 2 – Attachment B**

b.      Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

c.      Evidence of the lack of such malicious software.

d.      Evidence indicating how and when the Computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime under investigation and to the Computer user.

e.      Evidence indicating the Computer user's state of mind as it relates to the crime under investigation.

f.      Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence.

g.      Evidence of counter-forensic programs (and associated data) that are designed to wipe or eliminate data from the Computer.

h.      Evidence of the times the Computer was used.

i.      Passwords, encryption keys, and other access devices that may be necessary to access the Computer.

j.      Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer.

k.      Records of or information about Internet Protocol addresses used by the Computer.

l.      Records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web

**Page 3 – Attachment B**

pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

m.    Contextual information necessary to understand the evidence described in this attachment.

n.    Routers, modems, and network equipment used to connect computers to the Internet.

### Search Procedure

4.    The search for data capable of being read, stored, or interpreted by a computer or storage device may require authorities to employ techniques, including imaging any computer or storage media and computer-assisted scans and searches of the computers and storage media, that might expose many parts of the computer to human inspection in order to determine whether it constitutes evidence as described by the warrant.

5.    The initial examination of the computer and storage media will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.  The government shall complete this review within 180 days of the date of execution of the warrant.  If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

6.    If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the computer and storage media do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders

**Page 4 – Attachment B**

further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

7.     If an examination is conducted and the computer and storage media do not contain any data falling within the ambit of the warrant, the government will return the computer and storage media to its owner within a reasonable period of time following the search and will seal any image of the computer and storage media, absent further authorization from the Court.

8.     The government may retain any digital device containing contraband or evidence, fruits, or instrumentalities of the offense described herein, or to commence forfeiture proceedings against the computer and storage media and/or the data contained therein.

9.     The government will retain a forensic image of the computer and storage media for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 5 – Attachment B**